**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JANICE WRISTON, et al.,

                 Plaintiffs,

v.                                  CIVIL ACTION NO.   2:20-cv-00614

WEST VIRGINIA DEPARTMENT OF HEALTH
AND HUMAN RESOURCES, et al.,

                 Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant West Virginia Department of Health and Human Resources' ("DHHR") Motion to Dismiss, (ECF No. 6.)   For the reasons more fully explained below, the motion is **GRANTED**.   Defendants DHHR and Child Protective Services are **DISMISSED WITH PREJUDICE**.   Defendant Sorrent is **DISMISSED WITHOUT PREJUDICE**.

## I.   BACKGROUND

This action arises from the alleged neglect and abuse of a minor child, R.B., resulting in her tragic and untimely death.   The following allegations are drawn from the Complaint.   (ECF No. 1.)   The Plaintiff, Janice Wriston ("Plaintiff"), is the administratrix of the Estate of R.B., who was eight years old when she passed away.   (*Id.* at ¶ 1.)   Plaintiff was the biological mother of R.B.   (*Id.* at ¶ 7.)   In or around February 2013, R.B. "was placed in the home" of two individuals, Marty Browning and Julie Titchenell.   (*Id.* at ¶ 21.)   During the calendar year of 2018, R.B. was the subject of "multiple abuse and neglect reports" made to Defendants DHHR, Child Protective

Services ("CPS"), and Joseph Sorrent ("Sorrent") (collectively, "Defendants"). Among these reports, some made by "mandatory reporters" as defined by W. Va. Code § 49-2-803, included that R.B. was in the "care, custody, and control of individuals unfit to provide her care," and that she was "beaten by wooden and metal objects, starved, forbidden to drink water, and forced to wear a diaper and sleep on the floor." (*Id.* at ¶¶ 9–11.) Further, Plaintiff alleges that the Oak Hill, West Virginia, Police Department conducted an investigation, but that investigation was "hampered by a lack of cooperation by the Defendants" through the untimely and incomplete submission of records. (*Id.* at ¶ 12.) Plaintiff additionally alleges that Defendants "willfully and recklessly falsified records to hide the abuse of R.B." (*Id.* at ¶ 27.)

R.B. suffered cardiac arrest on December 26, 2018, and local authorities were called to the hospital. (*Id.* at ¶ 13.) Plaintiff alleges that R.B.'s "body had multiple bruising and abrasions as a result of assault/molestation." (*Id.* at ¶ 14.) Plaintiff further alleges that "[a]t the time [R.B.] was pronounced dead, she suffered cardiac arrest caused by unspecified respiratory arrest." (*Id.*)

Plaintiff alleges that an "[i]nvestigation in this matter revealed that the home was manifestly unfit for R.B. care." (*Id.* at ¶ 23.) Plaintiff further alleges that the Defendants' "actions and inactions and conduct . . . ultimately resulted in the death of the said R.B." (*Id.* at ¶ 24.) Defendants allegedly "failed to properly investigate and inspect the dangerous, unfit and unsafe living conditions that existed in the home . . . and failed to ensure that the home was safe, fit and suitable for children[.]" (*Id.* at ¶ 29.)

Plaintiff initiated this suit in this Court on September 17, 2020. (*Id.*) Plaintiff brings the following eight causes of action, presumably against each Defendant: (1) violations of the 8th Amendment of the United States Constitution pursuant to 42 U.S.C. §1983; (2) violations of the Child Welfare Act and "federal law" pursuant to 42 U.S.C. §1983; (3) violations of the Child

Welfare Act; (4) per se violation of the Child Welfare Act; (5) negligence; (6) gross negligence; (7) outrage; and (8) negligent hiring/supervision.   (*Id.* at 6–15.)

On November 23, 2020, DHHR filed the instant motion to dismiss, (ECF No. 6), along with a Motion to Stay Discovery, (ECF No. 9), as DHHR raised several immunity claims that it argued were dispositive of this action.   Plaintiff filed her response in opposition on December 18, 2020.  (ECF No. 14.)   DHHR did not file a reply.   Then, on May 24, 2021, this Court ordered additional briefing by the parties on the issue of sovereign immunity and whether provisions in an insurance policy could waive immunity.  (ECF No. 24.)   The parties were given until June 7 to file their briefs, and June 14 should they wish to file any response.  (*Id.*)

Defendant DHHR filed its brief on the issue of sovereign immunity on June 7, 2021.   (ECF No. 35.)   Plaintiff filed her brief on June 8, 2021, beyond the deadline ordered by the Court. (ECF No. 36.)   Then, without leave of Court, Plaintiff filed an "Amended Memorandum" on June 14, which served to "supersede" her original brief.   (ECF No. 37.)   Plaintiff's Amended Memorandum totals 26 pages in length, well beyond the limit proscribed by Rule 7.1(a)(2) of the Local Rules of Civil Procedure.   DHHR, understandably, then filed a reply on June 21, (ECF No. 38), and renewed its motion to stay discovery.   (ECF No. 39.)   On July 20, this Court granted the motion to stay discovery, pending resolution of the instant motion to dismiss.   (ECF No. 45.) With the briefing on this motion complete, it is now ripe for adjudication.

## II.   *LEGAL STANDARD*

### A.  *Subject-Matter Jurisdiction under Rule 12(b)(1)*

"Federal district courts are courts of limited jurisdiction."   *Haley v. Virginia Dep't of Health*, No. 4:12-cv-00016, 2012 WL 5494306, at *2 (W.D. Va. Nov. 13, 2012).   Therefore, "[i]t is axiomatic that a court must find it has jurisdiction before determining the validity of any claims

3

brought before it." *Price v. West Virginia Air Nat'l Guard, 130th Airlift Wing*, Civ. Action No. 2:15-cv-11002, 2016 WL 3094010, at *2 (S.D. W. Va. June 1, 2016).   Whether a court possesses subject matter jurisdiction may be raised by a party or by the court, *sua sponte*, at any point in the litigation.   *Domestic Violence Survivor's Support Group, Inc. v. Crouch*, Civ. Action No. 2:18-cv-00452, 2020 WL 59949897, at *4 (S.D. W. Va. Oct. 7, 2020).   If, at any point, the court lacks subject matter jurisdiction, the claim must be dismissed.   *Id.*   "The burden of showing the existence of subject matter jurisdiction rests on the plaintiff."   *Adkins v. United States*, 923 F.Supp.2d 853, 857 (S.D. W. Va. 2013).

While the Fourth Circuit has not yet resolved "whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or Rule 12(b)(6)," the trend has been to treat the assertion of Eleventh Amendment immunity as motions under Rule 12(b)(1). *Haley*, 2012 WL 3094010 at *2, n.2 (citing *Andrews v. Daw,* 201 F.3d 521, 525 n.2 (4th Cir. 2000)).   "Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: 'facial attacks' and 'factual attacks.'"   *Adkins*, 923 F.Supp.2d. at 857.   A "facial attack" questions whether "the allegations of the complaint are facially [ ]sufficient to sustain the court's jurisdiction."   *Price*, 2016 WL 3094010 at *2 (quoting *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986) (Murnaghan, J., concurring)).   Thus, in reviewing a facial attack brought pursuant to Rule 12(b)(1), a "court must accept the allegations as true and proceed to consider the motion as it would a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."   *Id.*

### B.  Motion to Dismiss under Rule 12(b)(6)

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State*

*Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the ... claim is and the grounds upon which it rests") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).   Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.   This Court then "assume[s] the[ ] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.*   Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.*   "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than

the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## III.   DISCUSSION

DHHR raises several arguments for the dismissal of the Complaint.   First, DHHR argues that CPS is not an entity capable of being sued because it is an office within, and therefore falls under the supervision of, DHHR and is thus improperly named.[1]   (ECF No. 7 at 4.)   Relatedly, DHHR argues that all claims asserted against Sorrent must similarly be dismissed, as W. Va. Code § 49-2-802(h) establishes that no CPS case worker "may be held personally liable for any professional decision or action taken . . . in the performance of his or her official duties[.]"   (*Id.* at 5.)   DHHR next asserts that Plaintiff's claims are barred by the Eleventh Amendment, as Defendants are all entitled to sovereign immunity.   (*Id.*)   Then, DHHR argues that Plaintiff's claims made pursuant to § 1983 fail because the DHHR and CPS are not "persons" as defined by 42 U.S.C. § 1983.   (*Id.* at 6.)   DHHR further asserts that Defendants are all immune from Plaintiff's claims pursuant to W. Va. Code § 49-2-810, which establishes that DHHR and its officials and institutions are immune from civil and criminal liability in the good-faith execution of their responsibilities.   (*Id.* at 6–7.)   DHHR then argues that Counts III, IV, V, VI, VII, and VII—the state law claims—are all barred by the "public duty doctrine."   (*Id.* at 7–8.)   Finally,

---

[1] The Court notes that it would appear that neither Joseph Sorrent nor CPS have been served with the Complaint or made an appearance in this matter.   (*See also* ECF No. 38 at 1.)   Regarding CPS, DHHR has asserted that is not an entity capable of being sued, and should therefore be dismissed from this action.   Indeed, West Virginia Code § 49-2-802 establishes CPS offices within the DHHR and sets forth the general duties and powers of each CPS office.   The ability to be sued is conspicuously absent from this statute.   Moreover, Plaintiff has failed to respond to this argument, which indicates that she has abandoned this claim.   *See Brevard v. Racing Corp. of West Virginia*, Civ. Action No. 2:19-cv-578, 2020 WL 1860713 at *8 (S.D. W. Va. Apr. 13, 2020); *Taylor v. Clay Cty. Sheriff's Dep't*, No. 2:19-cv-00387, 2020 WL 890247, at *2 (S.D. W. Va. Feb. 24, 2020) (finding the plaintiff abandoned their claims because they failed to address the defendants' arguments); *Blankenship v. Necco, LLC*, No. 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion . . . can indicate that the non-moving party concedes the point or abandons the claim.").   Even if she had responded, it would have been to no avail. Therefore, for the foregoing reasons, Defendant DHHR's motion to dismiss is **GRANTED** on this point, and CPS is hereby **DISMISSED** from this action.

6

DHHR argues that all Defendants are entitled to qualified immunity and that qualified immunity "categorically bar[s]" Counts V, VI, and VIII of the Complaint.   (*Id.* at 8–14.)

The Court begins its analysis on the sovereign immunity issue.   In the original briefing, the parties dedicated a total of two paragraphs of discussion to this consequential issue, which led to the Court's order for additional briefing.   Sovereign immunity ultimately bars Plaintiff's claims against DHHR, and therefore the Court declines to entertain its remaining arguments for dismissal, except where otherwise noted.

### A.  Sovereign Immunity

In its May 24th Order, the Court directed the parties to submit additional briefing on the issue of sovereign immunity.   (*See* ECF No. 26.)   Specifically, the parties were to address "any potential waiver of sovereign immunity" contained within the DHHR's liability insurance policy. (*Id.*)   As noted above, DHHR submitted its brief timely and in accordance with the Local Rules of Civil Procedure.   (*See generally* ECF No. 35.)   Plaintiff did not.   Not only was Plaintiff's briefing untimely, (ECF No. 36), but Plaintiff's Amended Memorandum was without leave of Court and exceeded the page length dictated by the Local Rules.   DHHR urges the Court to strike Plaintiff's Amended Memorandum from the record because it is "deficient for a plethora of reasons."[2]   (ECF No. 35 at 3.)   While the Court agrees that Plaintiff's Amended Memorandum runs afoul of not only the Local Rules but this Court's own order, and for which the Court admonishes counsel, it will not strike the briefing because of the important—and ultimately

---

[2] Among these reasons is Plaintiff raising additional arguments that were not raised in its original response to the motion to dismiss and not ordered by the Court.   Indeed, Plaintiff has raised at least one argument in response to Defendants' assertion of qualified immunity that neither appeared in her original response nor was directed to address by the Court.   Plaintiff cannot raise this argument now, and it is therefore deemed waived.   *Taylor v. Clay Cty. Sheriff's Dep't*, No. 2:19-cv-00387, 2020 WL 890247, at *2 (S.D. W. Va. Feb. 24, 2020) (finding the plaintiff abandoned their claims because they failed to address the defendants' arguments); *Blankenship v. Necco, LLC*, No. 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion . . . can indicate that the non-moving party concedes the point or abandons the claim.").

dispositive—issues discussed therein.   The Court thus proceeds with its analysis on the application of sovereign immunity to this matter.

The Eleventh Amendment to the United States Constitution establishes the following:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court of the United States has recognized that "the significance of this Amendment lies in its affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III of the Constitution."   *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985), *superseded by statute*, Rehabilitation Act Amendments of 1986, 100 Stat. 1845, 42 U.S.C. § 2000d–7, *as recognized in Lane v., Pena*, 518 U.S. 187 (1996) (quoting *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (internal quotation marks omitted)).   *See also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997) ("The Amendment, in other words, enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction.")   This limitation on judicial authority has led the Supreme Court to reason that the Eleventh Amendment similarly prohibits "a citizen from bringing a suit against his own State in federal court, even though the express terms of the Amendment do not so provide."   *Id.* (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

Yet, "[t]he Eleventh Amendment bar to suit is not absolute."   *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304 (1990).   Three narrow exceptions exist to that constitutional limitation on authority.   *Lee-Thomas v. Prince George's Cnty. Public Schools*, 666 F.3d 244, 248 (4th Cir. 2012).   First, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority."   *Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001) (internal

quotation marks and alterations omitted).   Second, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law."   *Frew ex rel. Frew v. Hawkins,* 540 U.S. 431, 437 (2004).   And third, the State may waive its right to immunity and consent to suit.   *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

The parties do not dispute that the DHHR is a state agency and "functions as an 'arm of the State." (ECF No. 37 at 3, n.3 (quoting *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997)).)   The parties also do not argue that immunity has been abrogated by an act of Congress nor is this suit one seeking prospective injunctive relief.   Thus, the question here is whether the DHHR has waived sovereign immunity pursuant to the third exception listed above.

DHHR maintains that it has not waived statutory immunity.   First, DHHR identifies that the relevant insurance policy, (ECF No. 35–1), states that "[i]t is a condition precedent of coverage under this policy that the additional insured does not waive any statutory or common law immunity conferred upon it." (*Id.* at 1, 30.)   DHHR argues that the Fourth Circuit has spoken directly to this issue in *Westinghouse Elec. Corp. v. West Virginia Dept. of Highways*, 845 F.2d 468 (4th Cir. 1988) ("*Westinghouse*"), where the court affirmed the dismissal of an action against the West Virginia Department of Highways pursuant to the Eleventh Amendment. (ECF No. 35 at 2.) DHHR asserts that *Westinghouse* forecloses Plaintiff's argument that W. Va. Code § 29-12-5 waives sovereign immunity so long as the recovery sought is up to and not beyond the insurance policy limits. (*Id.* at 3–4.)

Plaintiff, in turn, counters that the Fourth Circuit's decision in *Lee-Thomas* "essentially supplanted" the *Westinghouse* decision, and that DHHR has waived immunity both directly through the application of W. Va. Code § 29-12-5 and "constructively" through its receipt of federal funds. (ECF No. 37 at 2.)   Plaintiff argues that the West Virginia Supreme Court of

Appeals has "implicitly expand[ed]" the application of § 29-12-5 to include federal courts in its recent decision in *West Virginia Lottery v. A-1 Amusement*, 807 S.E.2d 760 (2017). Plaintiff argues further that, even if this Court was to find immunity has not been directly waived, DHHR has still constructively waived immunity through its participation in federal programs and acceptance and receipt of federal funds. (*Id.* at 11.) Finally, Plaintiff argues that Defendant Sorrent has been sued in his individual capacity and is therefore not entitled to sovereign immunity and that DHHR lacks legal standing to assert this argument on his behalf. (*Id.* at 14–15.)

"A state may only be held to have waived its immunity in one of two ways: (1) directly by statutory or constitutional provision, . . . , or (2) 'constructively,' by voluntarily participating in a federal program when Congress has expressly conditioned state participation in that program on the state's consent to suit in federal court[.]" *Westinghouse*, 845 F.2d at 470 (citing *Atascadero*, 473 U.S. at 241, 246–47) (internal citations omitted). The Supreme Court has stated that it will find a waiver if the State "makes a 'clear declaration' that it intends to submit itself to [federal] jurisdiction." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999). "Thus, a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation. . . . Nor does it consent to suit in federal court merely by stating its intention to 'sue and be sued,' . . . or even by authorizing suits against it 'in any court of competent jurisdiction[.]'" *Id.* (internal citations omitted). Similarly, the Fourth Circuit has instructed that "[b]ecause the eleventh amendment protects the state specifically against suit in federal court, . . . , a state's general waiver of sovereign immunity will not suffice to waive the immunity conferred by the eleventh amendment." *Westinghouse*, 845 F.2d at 470 (internal citation omitted). Because a general waiver will not serve to waive Eleventh Amendment immunity, a statutory provision will only be sufficient if it contains an "'unequivocal' statement

10

of the state's intention to subject itself to suit *in federal court*." *Id.* (citing *Great Northern Life Ins. Co. v. Read,* 322 U.S. 47, 54 (1944); *Smith v. Reeves,* 178 U.S. 436, 441 (1900)) (emphasis in original). With this framework established, the Court now turns to whether the state of West Virginia, and by extension the DHHR, has either directly or indirectly waived its Eleventh Amendment immunity.

### 1.  *Direct Waiver by Statute*

Plaintiff asserts that W. Va. Code § 29-12-5(a)(4) contains a direct and explicit waiver of Eleventh Amendment immunity. That statute establishes the following:

> Any policy of insurance purchased or contracted for by the board shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the State of West Virginia against claims or suits: *Provided,* That nothing herein shall bar a state agency or state instrumentality from relying on the constitutional immunity granted the State of West Virginia against claims or suits arising from or out of any state property, activity or responsibility not covered by a policy or policies of insurance: *Provided, however,* That nothing herein shall bar the insurer of political subdivisions from relying upon any statutory immunity granted such political subdivisions against claims or suits.

W. Va. Code § 29-12-5(a)(4). Plaintiff urges the Court to adopt the Fourth Circuit's holding in *Lee-Thomas*, which she argues "supplanted" *Westinghouse*, and find that the above statute waives the State of West Virginia's Eleventh Amendment sovereign immunity.

Before addressing Plaintiff's arguments, the Court notes that the Fourth Circuit has spoken directly to the statute above in *Westinghouse*. There, the Fourth Circuit found that the application of the stringent *Atascadero* test failed to support any claim of waiver purported by the above statute. *Westinghouse*, 845 F.2d at 470. In particular, the court stated:

> These provisions can, at most, be construed as waiving the state's immunity from suit in *state* court. Neither contains the "unequivocal" statement of the state's intention to subject itself to suit in *federal* court required by *Atascadero,* even assuming the legislature had the power under state law to do so.

*Id.* at 471.   Clearly, when presented directly with the statute at hand, the Fourth Circuit found that the statute did not "unequivocally" waive Eleventh Amendment sovereign immunity.   Yet, this Court is guided by the principle that because whether a state waives sovereign immunity involves a question of state law, the federal courts are obligated to defer to the decision of the state's highest court on the issue.   *See Palmer v. Ohio*, 248 U.S. 32, 34 (1918).   Plaintiff asserts that the Supreme Court of Appeals has spoken to the issue on multiple occasions, and so the Court turns to Plaintiff's arguments, beginning with whether *Lee-Thomas* "supplanted" the Fourth Circuit's decision in *Westinghouse*.

In *Lee-Thomas*, the Fourth Circuit was presented with the issue of whether the enactment of a Maryland statute[3] waived Eleventh Amendment immunity.   *Lee-Thomas*, 666 F.3d at 249. In the district court below, the court granted summary judgment to the defendant board of education "only insofar as Lee-Thomas's damage claim exceeded $100,000," the amount specified in the statute at the time.   *Id.* at 247.   The district court's opinion largely adhered to a decision by the Court of Appeals of Maryland—the highest court of the state—in which it held that the statute effectively waived a county board of education's Eleventh Amendment immunity up to the amount of $100,000.   *Id.* (citing *Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert*, 409 Md. 200, 973 A.2d 233, 243 (2009)).   The board of education moved the district court to reconsider its opinion, and subsequently appealed the court's denial of the motion.   *Id.*

In affirming the district court, the Fourth Circuit recognized that "the question of waiver of sovereign immunity by a state constitutional provision or statute is a matter of state law, 'as to which the decision of the [state's highest court] is controlling.'"   *Id.* at 249 (quoting *Palmer*, 248

---

[3] That statute reads: "A county board of education may not raise the defense of sovereign immunity to any claim of $400,000 or less."   Md. Code Ann., Cts. & Jud. Proc. § 5-518(c).   At the time *Lee-Thomas* was issued, the statute read "any claim of $100,000 or less."   *See Lee-Thomas*, 666 F.3d at 247, n.3.

12

U.S. at 34).   Importantly, the Fourth Circuit reaffirmed the principles articulated in *Atascadero*, where a statutory waiver of immunity will be found "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Id.* at 250 (quoting *Atascadero*, 473 U.S. at 240).   The court further recognized that the test is a "stringent one," and that "[h]ence, a state does not waive its Eleventh Amendment immunity by consenting to suit in the courts of its own creation, by stating its intention to 'sue and be sued,' or even by authorizing suits against it 'in any court of competent jurisdiction.'" *Id.* at 251 (quoting *Coll. Sav. Bank*, 527 U.S. at 676 (cleaned up)).   Based on the foregoing, the court reasoned that where a "state's highest court has applied the *Atascadero* stringent test and carefully scrutinized state law" to determine whether a state had effectuated a waiver of Eleventh Amendment immunity, a federal court is obliged to defer to that state court decision.   *Id.* at 251–52 ("This command is applicable here because 'the States' immunity from suit is a fundamental aspect of [their] sovereignty' that 'neither derives from, nor is limited by, the terms of the Eleventh Amendment.' . . . Consequently, a state's highest court is entitled to say what that state's law is on the question of consent to suit in federal court.")   Because the Court of Appeals of Maryland had acknowledged and applied the *Atascadero* stringent test and found that the statute at issue contained an "unambiguous" waiver of Eleventh Amendment immunity, the Fourth Circuit affirmed the district court's grant of summary judgment and denial of the motion for reconsideration.   *Id.* at 253 (citing *Zimmer-Rubert*, 973 A.2d at 242–43).

Based on the foregoing, it is clear that *Lee-Thomas* has not supplanted *Westinghouse* at all, but instead reinforces the principles articulated therein.   Therefore, the question of whether W. Va. Code § 29-12-5(a)(4) waives Eleventh Amendment sovereign immunity turns on whether the West Virginia Supreme Court of Appeals has spoken to the issue and analyzed the statute pursuant

to the *Atascadero* stringent test.   Plaintiff asserts that the Supreme Court of Appeals "has spoken on multiple occasions" on the issue.   The Court disagrees.

Plaintiff particularly relies on *Pittsburgh Elevator Co. v. West Virginia Bd. of Regents*, 310 S.E.2d 675 (1983) and *West Virginia Lottery* for her position that W. Va. Code § 29-12-5 waives Eleventh Amendment sovereign immunity.   The notable takeaway from *Pittsburgh Elevator* is the well-known principle in West Virginia that lawsuits against the State and seeking recovery against the State's insurance carrier are "outside the bounds of the constitutional bar to suit contained in *W. Va. Const. art. VI, § 35*."[4]   *Pittsburgh Elevator Co.*, 310 S.E.2d at 688 (emphasis added).   Even at first glance, it is apparent that *Pittsburgh Elevator* speaks only to the immunity granted by the West Virginia Constitution, and not the sovereign immunity articulated by the Eleventh Amendment.   In fact, the only mention of the Eleventh Amendment in the decision comes from Justice Miller's concurrence, in which he expresses some reluctance in judicially abolishing constitutionally-granted immunity.   *Id.* at 691 (Miller, J., concurring) ("I do not believe that we can nullify a constitutional command.")

A review of *West Virginia Lottery* reveals the same.   There, the Supreme Court of Appeals faced the question of whether the state lottery had waived its claim of sovereign immunity pursuant to Article VI, § 35 of the West Virginia Constitution or qualified immunity by neglecting to raise these issues in its original motion to dismiss.   *West Virginia Lottery*, 807 S.E.2d at 765–66. Following the filing of an amended complaint, the lottery raised the immunity defenses for the

---

[4] Article VI, § 35 of the West Virginia Constitution states, as follows:

> The state of West Virginia shall never be made defendant in any court of law or equity, except the state of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.

14

first time, although it had reserved the right to raise the immunity defense after arguing the original complaint was untimely filed, and the circuit court denied the motion, which the lottery then appealed. *Id.* at 765. Ultimately, the Supreme Court found that the lottery did not waive the immunity defense. *Id.* at 766.

Notable, however, is the absence of any discussion regarding the Eleventh Amendment in *West Virginia Lottery*. Even more telling is the following footnote:

> We take this opportunity to note that parties and courts often use the terms "constitutional immunity," "sovereign immunity," and "absolute immunity" interchangeably. To the extent practicable, we will use the term "sovereign immunity" throughout the text of this Opinion. **To clarify, these terms, as used in this opinion, refer to the state's general immunity from suit under article VI, section 35 of the West Virginia Constitution** ("The State of West Virginia shall never be made defendant in any court of law or equity[.]").

*Id.* at 764, n.7 (emphasis added). Absent any discussion about the Eleventh Amendment or *Atascadero*, this footnote in the introduction to the Supreme Court of Appeals' decision makes abundantly clear that *West Virginia Lottery* does not stand for any interpretation as to the waiver of sovereign immunity in *federal* court.[5]

Finally, this Court turns to the Supreme Court's decision in *West Virginia Bd. of Educ. v. Marple*, 783 S.E.2d 75 (W. Va. 2015). Again, the Supreme Court addressed the question of immunity and § 29-12-5, only this time the Court addressed whether this section extended so far as to encompass *qualified* immunity. *Id.* at 82. In reaching this question, however, the Supreme Court acknowledged that the constitutional immunity referenced in the statute flows from the *West*

---

[5] Plaintiff argues that the Supreme Court of Appeals has "implicitly" expanded the application of W. Va. Code § 29-12-5 to federal courts, through *West Virginia Lottery*. (ECF No. 37 at 10.) However, the above quote forecloses that argument, as too does the Supreme Court of the United States' articulation of the *Atascadero* stringent test. As noted, the parties have not directed the Court to any decisions by the West Virginia Supreme Court of Appeals in which it has applied the *Atascadero* test to the statute in question. Plaintiff's argument simply stretches the application of § 29-12-5 far beyond its bounds and the reasoning of these Supreme Court of Appeals decisions.

*Virginia Constitution*, not the Eleventh Amendment.   *Id.* at 82–83 ("Therefore, we hold that the state insurance policy exception to sovereign immunity, created by West Virginia Code § 29–12–5(a)(4) [2006] and recognized in Syllabus Point 2 of *Pittsburgh Elevator Co. v. W.Va. Bd. of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983), applies only to immunity under the *West Virginia Constitution* and does not extend to qualified immunity.")   Again absent from this decision was any discussion of the Eleventh Amendment or the *Atascadero* stringent test.

A review of the relevant law indicates that the Supreme Court of Appeals has not addressed whether W. Va. Code § 29-12-5(a)(4) operates to waive immunity pursuant to the Eleventh Amendment.   Instead, it would appear that neither the Supreme Court nor the West Virginia Legislature has spoken to the issue, despite having ample opportunity to do so.   Undeniably, a litany of cases from this district supports the notion that DHHR enjoys sovereign immunity pursuant to the Eleventh Amendment.   *Domestic Violence Survivors Support Grp., Inc. v. Crouch*, No. 2:18-CV-00452, 2020 WL 5949897, at *10 (S.D. W. Va. Oct. 7, 2020) (basing its finding on the relationship of the DHHR to the West Virginia executive branch); *Edison v. W. Virginia ex rel. WV Dep't of Health & Human Servs. Bureau of Child Support Enf't*, No. 2:18-CV-00411, 2019 WL 8137129, at *6 (S.D. W. Va. Nov. 5, 2019), *report and recommendation adopted sub nom. Edison v. W. Virginia ex rel. WV Dep't of Health & Human Res., Bureau of Child Support Enf't*, No. 2:18-CV-00411, 2019 WL 6705006 (S.D. W. Va. Dec. 9, 2019) (holding that DHHR is immune from suit under the Eleventh Amendment); *Frederick v. West Virginia Dept. of Health and Human Servs.*, Civ. Action No. 2:18-cv-01077, 2019 WL 1198027, at *17 (S.D. W. Va. Feb. 15, 2019), *report and recommendation adopted Frederick v. West Virginia Dept. of Health and Human Servs.*, Civ. Action No. 2:18-cv-01077, 2019 WL 1173358 (Mar. 13, 2019) ("However, as an arm of the State of West Virginia, the DHHR is immune from suit in federal court under the

16

Eleventh Amendment to the United States Constitution[.]"); *Underwood v. West Virginia Dept. of Health and Human Resources*, Civ. Action No. 2:11-cv-00506, 2013 WL 2319253, at *4 (S.D. W. Va. May 28, 2013) ("The defendants WVDHHR and John Najmuski, in his official capacity as Commissioner of WVDHHR, are entitled to Eleventh Amendment immunity from suit in federal court for damages."); *Workman v. Mingo Cnty. Schs.*, No. 2:09-cv-00325, 2009 WL 10705163, at *3 (S.D. W. Va. 2009) (because "an act of the West Virginia Legislature created DHHR and allowed it to operate as part of the executive branch," "DHHR is an arm of the state and not subject to this suit pursuant to the Eleventh Amendment"). *See also Leonard v. Starkey*, Civ. Action No. 1:14-CV-42, 2016 WL 183557, at *8 (N.D. W. Va. Jan. 14, 2016) (concluding that DHHR is an "arm of the state" and therefore entitled to Eleventh Amendment immunity).

Because W. Va. Code § 29-12-5 does not serve as a direct waiver of sovereign immunity under the Eleventh Amendment, Plaintiff's argument fails. However, because Plaintiff argues that DHHR has "constructively" waived immunity, the Court proceeds to this argument to determine whether Eleventh Amendment immunity bars Plaintiff's claims.

## 2.   *Constructive Waiver*

Next, Plaintiff argues that DHHR has "constructively" waived sovereign immunity through its voluntary participation in federal programs and its acceptance of federal funding. (ECF No. 37 at 11.)   Plaintiff goes on to list no fewer than 23 federal programs it alleges DHHR participates in and notes that "the endeavor to compile even just the above list has been tedious and time-consuming[.]"   (*Id.* at 13.)   DHHR responds and argues that the "mere receipt of federal funds" is not sufficient to consent to suit.   (ECF No. 38 at 10.)   Instead, DHHR argues that Plaintiff must have brought a federal cause of action that is associated with the State's participation in a federal

17

program and where such participation is conditioned on the State's waiver of immunity.   (*Id.* at 11.)

The Supreme Court of the United States has instructed that the "mere receipt of federal funds cannot establish that a State has consented to suit in federal court."   *Atascadero*, 473 U.S. at 246–47 (citing *Florida Dept. of Health v. Florida Nursing Home Assn.,* 450 U.S. 147, 150 (1981) (*per curiam*)).   Instead, a state "may waive its immunity by voluntarily participating in federal spending programs when Congress expresses 'a clear intent to condition participation in the programs . . . on a State's consent to waive its constitutional immunity.'"   *Litman v. George Mason Univ.*, 186 F.3d 544, 550 (4th Cir. 1999) (quoting *Booth v. Maryland*, 112 F.3d 139, 145 (4th Cir. 1997)).   Much like a direct waiver of immunity, "because of the Eleventh Amendment's vital role in preserving the federal balance, determinations of whether a State has waived its immunity are subjected to 'stringent,' exacting standards."   *Id.* (citing *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)).   Therefore, "a State cannot be deemed to have waived its Eleventh Amendment immunity constructively even by engaging in activities after Congress has 'made clear that such activity would subject [the State] to suit [in federal court].'"   *Id.* (quoting *College Sav. Bank*, 527 U.S. at 671);[6] *Litman*, 186 F.3d

---

[6] The Supreme Court has, in fact, spoken with disfavor regarding this "constructive waiver" of Eleventh Amendment immunity.   As the late Justice Scalia opined,

> Forced waiver and abrogation are not even different sides of the same coin—they are the same side of the same coin. "All congressional creations of private rights of action attach recovery to the defendant's commission of some act, or possession of some status, in a field where Congress has authority to regulate conduct. Thus, *all* federal prescriptions are, insofar as their prospective application is concerned, in a sense conditional, and—to the extent that the objects of the prescriptions consciously engage in the activity or hold the status that produces liability—can be redescribed as invitations to 'waiver.'" . . . There is little more than a verbal distinction between saying that Congress can make Florida liable to private parties for false or misleading advertising in interstate commerce of its prepaid tuition program, and saying the same thing but adding  at the end "if Florida chooses to engage in such advertising." As further evidence that constructive waiver is little more than abrogation under another name, consider the revealing facts of this case: The statutory provision relied upon to demonstrate that Florida constructively waived its sovereign

at 553 ("Moreover, any state reading § 2000d–7(a)(1) in conjunction with 20 U.S.C. § 1681(a) would clearly understand the following consequences of accepting Title IX funding: (1) the state must comply with Title IX's antidiscrimination provisions, and (2) it consents to resolve disputes regarding alleged violations of those provisions in federal court."). *See also Fain v. Crouch*, --- F.3d. ---, Civ. Action No. 3:20-0740, 2021 WL 2004793, at *2 (S.D. W. Va. May 19, 2021) ("Such a waiver must be a 'clear and unambiguous' condition of the funding.")

Plaintiff relies on a recent decision in this district, *Fain v. Crouch*, to support her argument that participation in federal programs and receipt of federal funds constitutes a waiver of Eleventh Amendment immunity but in so relying, ignores the context of the above precedent and its effect on that decision.   In *Fain*, the named plaintiff brought a putative class action lawsuit, in which he asserted claims of discrimination—both individually and on behalf of the proposed class—against the DHHR pursuant to the nondiscrimination clause under § 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116, and the Medicaid Act, 42 U.S.C. § 1396a(a)(10(A)–(B).   --- F.3d at ---, 2021 WL 2004793 at *2.   There, Judge Chambers found that the "Residual Clause" of § 1003 of the Civil Rights Remedies Equalization Act of 1986 [7]

---

immunity is the very same provision that purported to abrogate it.

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 683–84 (1999) (discussing the anomaly of "constructive waivers" in the realm of constitutional rights) (internal citations omitted).   Despite this denouncement of "constructive" waivers, the Supreme Court has made clear that Congress may condition the receipt of federal funds on the waiving of immunity, but that intention must be stated unambiguously.   *See Sossamon v. Texas*, 563 U.S. 277, 284–88 (2011).

[7] Section 1003 of the Civil Rights Remedies Equalization Act of 1986 reads as follows:

A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

This last clause—" or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal

incorporated § 1557 of the ACA, such that the DHHR waived its sovereign immunity. *Id.* at *3. In so finding, Judge Chambers stated that based on the explicit wording of § 1003, which waived immunity for violations of "any other Federal statute prohibiting discrimination," it necessarily incorporated § 1557, and therefore served to unambiguously waive immunity in that case. *Id.* Therefore, sovereign immunity did not bar the action. *Id.* at *4.

With this understanding, the Court now turns to the statute at issue—42 U.S.C. § 1983— to determine whether it unambiguously provides that DHHR, by agreeing to receive federal funds for various programs, has waived its Eleventh Amendment immunity.   Section 1983 establishes as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Notably, § 1983 itself does not waive immunity.   "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."   *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989).   *See also Giancola v. West Virginia Dept. of Public Safety*, 830 F.2d 547 (4th Cir. 1987) (finding that for the purposes of a civil action brought pursuant to § 1983, West Virginia did not waive immunity); *see also Meadows v. Huttonsville Correctional*

---

financial assistance"—is what Judge Chambers referred to as the "Residual Clause."   *Fain*, --- F.3d at ---, 2021 WL 2004793 at *3.

*Center*, 793 F.Supp. 684, 686 (N.D. W. Va. 1992) (same).   Therefore, the Eleventh Amendment prohibits such suits unless a state has waived its immunity.[8]   *Will*, 491 U.S. at 66.

Perhaps recognizing this, Plaintiff has thrown all but the kitchen sink of federal programs in which it alleges that the DHHR has participated, accepted funds, and thereby waived its immunity.   Despite naming no fewer than 23 federal programs, Plaintiff has not brought any cause of action pursuant to these programs and has further identified no provision under which the DHHR has waived its immunity.   As demonstrated above, it is simply not enough that a State participate in federal programs and receive federal funding.   *Atascadero*, 473 U.S. at 246–47.   Instead, Congress must *condition* the receipt of those federal funds on a waiver of sovereign immunity.   *See, e.g.*, *Litman*, 186 F.3d at 550, 551–52 ("In other words, in exercising its spending power, the federal government 'condition[s] an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds.' . . . And it also conditions these funds on the recipient state's consent to be sued in federal court for an alleged breach of the promise not to discriminate.") (internal citations omitted); *Fain*, --- F.3d. ---, 2021 WL 2004793, at *3.   Plaintiff's federal causes of action are both brought pursuant to 42 U.S.C. § 1983, which does not waive sovereign immunity, and only vaguely allege violations of the Eighth Amendment and the West Virginia Child Welfare Act, W. Va. Code § 49-1-101, *et seq*, (*See* ECF No. 1), neither of which abrogate or otherwise waive Eleventh Amendment immunity.

---

[8] The *Will* Court also rejected the petitioner's argument that state officials be considered "persons," as defined by § 1983.   *Will*, 491 U.S. 70–71.   Because a suit against a state official in their official capacity is a suit against the official's office, rather than the person, "it is no different from a suit against the State itself."   *Id.* at 71.   As noted previously, DHHR has raised this exact argument in its motion to dismiss Counts I and II.

Because Plaintiff has not asserted claims pursuant to any statute under which Congress has abrogated Eleventh Amendment immunity, or where the State has voluntarily waived immunity through participation in federal programs conditioned upon waiving its immunity, Plaintiff's claims are barred.   Defendant DHHR has asserted and is entitled to sovereign immunity pursuant to the Eleventh Amendment.   Therefore, for the foregoing reasons, DHHR's motion to dismiss is **GRANTED**, and Defendant DHHR is hereby **DISMISSED**.

> 3. *Defendant Sorrent*

Finally, the Court turns to whether the Eleventh Amendment extends to Sorrent in this matter.   The Court notes that DHHR's motion to dismiss was only filed on its own behalf; however, DHHR has asserted that Sorrent has been sued in his official capacity and is thus entitled to sovereign immunity as well.   (ECF No. 7 at 5; 38 at 5.)   Defendant Sorrent, though, does not seem to have been served with the complaint nor filed any responsive pleading.   (*See* ECF No. 37 at 1.)   Plaintiff argues that DHHR does not have standing to assert a sovereign immunity argument on behalf of Sorrent, as it has only filed its Motion to Dismiss in its own name.   (ECF No. 37 at 14–15.)   Moreover, Plaintiff argues that she has asserted claims against Sorrent in his individual capacity, including constitutional claims, and therefore is not entitled to sovereign immunity. (*Id.*)

To begin, while a court is not required to raise the issue of sovereign immunity *sua sponte*, it may.   *See Constantine v. Rectors and Visitors of George Mason University*, 411 F.3d 474, 481 n.3 (4th Cir. 2005) ("The Supreme Court has made it clear that federal courts are not *required* to raise Eleventh Amendment issues *sua sponte.* . . . We have stated in *dicta,* however, that "because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte.*") (quoting *Suarez Corp. Indus. v. McGraw,* 125 F.3d 222, 227 (4th

Cir.1997)) (internal citation omitted).   *See also Morris v. Western Regional Jail*, Case No. 3:17-cv-01148, 2017 WL 4080698 at *6, n.2 (S.D. W. Va. Aug. 22, 2017) *report and recommendation adopted by* 2017 WL 4078129 (S.D. W. Va. Sep. 14, 2017).   As the Court has already addressed the applicability of sovereign immunity to Defendant DHHR at length, it finds it is appropriate to similarly analyze its applicability to Defendant Sorrent at this time as well.

Suits against a state official in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent."   *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690, n. 55 (1978)).   Suits against a state officer in their official capacity, then, should be treated as suits against the state.   *Hafer v. Melo*, 502 U.S. 21, 24 (1991).   When a state officer is sued in their personal or individual capacity, however, the Eleventh Amendment does not bar the suit.   *Id.* at 26–27 (holding that state officials sued in their personal capacity are "persons" for the purposes of § 1983).   Thus, whether Defendant Sorrent may assert Eleventh Amendment immunity is determined based on whether he has been named in his official or personal capacity.

In *Biggs v. Meadows*, the Fourth Circuit held that "when a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." 66 F.3d 56, 61 (4th Cir. 1995).   More specifically, the Fourth Circuit has instructed that such factors include whether the plaintiff has failed "to allege that the defendant acted in accordance with a governmental policy or custom," requested "compensatory or punitive damages," and the "nature of any defenses raised in response to the complaint."   *Id.*

Here, the Court reasons that Plaintiff has sufficiently pled an individual capacity action against Sorrent such that he is not entitled to assert Eleventh Amendment immunity.   While the

23

factual allegations themselves may be a bit of a mixed bag, (*see* ECF No. 1 at 37 ("[Sorrent] and other employees . . . were acting in the scope of their employment[.]")), Plaintiff has explicitly identified that she is suing Sorrent in his individual capacity and has claimed compensatory and punitive damages.   (*Id.* at ¶ 88.)   Moreover, Defendant DHHR has raised numerous defenses in its motion to dismiss, including qualified immunity and W. Va. Code § 49-2-802(h),[9] on behalf of Sorrent.   *See, e.g.*, *Graham*, 473 U.S. at 167 (noting qualified immunity is a "personal immunity defense").   Finally, Plaintiff has alleged the deprivation of a constitutional right which does not appear to implicate an official policy or custom.   *See id.* at 166   ("[T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.").

Therefore, based on the foregoing, Defendant Sorrent is not entitled to assert Eleventh Amendment immunity.   As the Court referenced earlier, however, Defendant Sorrent has apparently not been served with the complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure.   Indeed, the docket for this action does not reflect that Plaintiff has submitted proof of service on Defendant Sorrent as required by Rule 4(l) or that Sorrent has otherwise made an appearance in this matter.

Rule 4(l) of the Federal Rules of Civil Procedure dictates that, "[u]nless service is waived, proof of service must be made to the court."   Further, Rule 4(m) establishes that service must be

---

[9] West Virginia Code § 49-2-802(h) establishes as follows:

> No child protective services caseworker may be held *personally* liable for any professional decision or action taken pursuant to that decision in the performance of his or her official duties as set forth in this section or agency rules promulgated thereupon.   However, nothing in this subsection protects any child protective services worker from any liability arising from the operation of a motor vehicle or for any loss caused by gross negligence, willful and wanton misconduct, or intentional misconduct.

(emphasis added).

24

made "within 90 days after the complaint is filed[.]"   Should service not be completed within that timeframe, a court may *sua sponte* dismiss the action without prejudice.   Plaintiff initiated the instant action on September 17, 2020, and to date, no proof of service has been made to the Court. This is well outside of the 90-day time limit imposed by Rule 4(m).   While Defendant Sorrent may not be entitled to assert sovereign immunity, the Court finds it appropriate to **DISMISS** Defendant Sorrent from this action **WITHOUT PREJUDICE** pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

*IV.    CONCLUSION*

For the reasons more fully explained above, Defendant DHHR's Motion to Dismiss, (ECF No. 6), is **GRANTED**, and this action is **DISMISSED** in its entirety.   Defendants DHHR and CPS are **DISMISSED** from this action **WITH PREJUDICE**.   Defendant Sorrent is **DISMISSED** from this action **WITHOUT PREJUDICE**.   The Court further **DIRECTS** the Clerk to remove this action from the Court's active docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 13, 2021

THOMAS E. JOHNSTON, CHIEF JUDGE